Lonnie C. DUNN, Appellant,

v.

Togo D. WEST, Jr., Secretary Of Veterans Affairs, Appellee.

No. 96–695.

United States Court of Veterans Appeals.

Sept. 23, 1998.

Michael P. Horan and Karen B. Levin were on the brief for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; John E. Moriarty, Deputy Assistant General Counsel; and Daniel G. Krasnegor were on the brief for the appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

HOLDAWAY, Judge:

The appellant, Lonnie C. Dunn, appeals a February 1996 decision of the Board of Veterans' Appeals (BVA or Board) which declined to reopen a claim for post-traumatic stress disorder (PTSD), and denied a compensable rating for postoperative residuals of a right inguinal herniorrhaphy. For the following reasons, the Court will remand the matter relating to his PTSD claim to the BVA, and will affirm the BVA's denial of an increased rating for hernia residuals.

## I. FACTS

The appellant had active service in the U.S. Army from August 1969 to March 1972, and served for one year in Vietnam. Service medical records mention complaints of right inguinal pain. In March 1980, Dr. Mian Shah performed a right herniorrhaphy, excision of a spermatic cord lipoma, and a right vasectomy. In April 1980, the regional office (RO) denied service connection for the right hernia. The appellant filed a Notice of Disagreement (NOD) in May 1980, and added a claim for a nervous disorder which he attributed to combat experiences in Vietnam. In an August 1980 letter, the appellant withdrew his claim for a nervous condition and asked VA to proceed with adjudication of his hernia claim.

In September 1980, the appellant's representative requested that VA examine the appellant for PTSD. In October 1980, Dr. Riaz Uddin Riaz found "no psychiatric diagnosis, apart from mild anxiety," and added that "it is difficult to connect his anxiety symptoms to his service in the Army." In November 1980, the RO denied service connection for PTSD. In July 1981, the BVA granted service connection for the right inguinal hernia, but denied service connection for PTSD because (1) no diagnosis of PTSD existed, and (2) because the BVA concluded on its own that "mere service in a combat zone or hearing gunfire or viewing civilian casualties are not felt to be recognizable stressors of such severity that would evoke significant symptoms in most individuals." On remand, the RO assigned a noncompensable rating to the hernia disability.

Private medical records indicate that the appellant was nervous, anxious, or depressed in June 1982, September 1982, June to August 1983, August 1986, and June to August 1988. In October 1986, the RO found that the appellant's service-connected hernia residuals had not increased to a compensable degree.

In September 1988, the Beckley, West Virginia, VA medical center (VAMC) examined the appellant and noted that "[a]side from symptoms of psychological numbing and some fearfulness and startle reactions, he does not fit the classic profile of a PTSD patient. Additionally his experience does not support much in the way of combat." The doctor diagnosed major depression and possible mild PTSD, and recommended that the appellant participate in counseling at the Princeton, West Virginia, Veterans Center.

In October 1988, the appellant filed a claim for a nervous condition. In an October 1988 statement in support of claim, he described ambushes and constant incoming fire while in Vietnam. Sometime later, private medical records were submitted which reported that in June 1982 the appellant was diagnosed with passive-aggressive personality disorder with possible paranoid traits, dysthymic disorder, and episodic alcohol abuse. The private records also noted that in July 1982, the appellant was tentatively diagnosed with alcohol abuse and schizoid personality, before being finally diagnosed with episodic alcohol dependence and avoidant personality disorder. In December 1988, the RO refused to reopen the appellant's claim for a nervous disorder, finding that the record contained no evidence of a link between a nervous condition and military service. In July 1989, VA medical records mentioned treatment at the Princeton Veterans Center. In an unappealed October 1991 rating decision, the RO refused to reopen the appellant's nervous condition claim because there was not sufficient evidence of a PTSD-inducing stressor, and there was not enough evidence that the appellant suffered from PTSD. An accompanying letter informed the appellant that the medical records from Beckley VAMC had been reviewed.

In June 1992, the RO received Social Security Administration (SSA) records and a copy of the SSA decision granting disability benefits based on findings that the appellant suffered from "severe chronic depression, a borderline level of intellectual functioning, and chronic alcohol abuse." In June 1992, the appellant requested an increased rating for his hernia condition "to include secondary [service connection] for prostrate [sic] gland condition." No mention was made of a vasectomy.

In July 1992, the RO received private medical records from Dr. Nasreen Dar prepared between August 1986 and May 1992 which

described periods of nervousness, depression, and frustration. Included was a February 1991 examination report diagnosing chronic, moderately severe, generalized anxiety disorder and moderately severe dysthymic disorder. In September 1992, the RO received a June 1991 letter from Dr. Riaz who diagnosed chronic, moderately severe, major depression, and chronic, moderately severe, generalized anxiety disorder. In September and October 1992, the RO received additional records from the Beckley VAMC mentioning treatment at the Princeton Veterans Center in 1988 and 1989.

In October 1992, more SSA records were received, indicating that in June 1986 the appellant had a history of "anxiety depression" and was advised to seek private psychiatric or neurologic treatment; that in August 1989, the appellant was found to suffer from "dysthymic disorder, with anxiety and depression secondary to physical complaints;" that for a period of time the appellant received monthly treatment at the Princeton Veterans Center; and that in January 1988, Dr. William Prudich diagnosed depression and anxiety.

In October 1992, the RO denied an increased rating for the appellant's hernia condition, and confirmed the denial of service connection for an acquired nervous disorder. The appellant filed an NOD in November 1992. In December 1992, an SOC was issued. The following month, VA received a November 1992 letter from the Princeton Veterans Center which described nervousness and depression, diagnosed alcoholism in remission, and reported the appellant's descriptions of his experiences in Vietnam. The supporting diagnostic and treatment records which the letter appears to summarize were not submitted and do not appear in the Record on Appeal. A substantive appeal was filed in January 1993. In February 1993, the RO reviewed the letter from Princeton Veterans Center and confirmed denial of service connection. In March 1993, the appellant stated that he had nothing more to submit, and asked that his claim be forwarded to the BVA. In April 1995, the BVA remanded for the RO to develop the record and to provide an examination of the appellant's right inguinal hernia condition. The PTSD claim was held in abeyance pending development.

In June 1995, Dr. Byrd White examined the appellant and noted a history of hernia repair and vasectomy, and found that the seven-inch scar was "freely movable and the scar itself is not tender." He added that the "reason for the vasectomy was not clear." Digital examination found some bilateral tenderness of the external inguinal ring, but the doctor observed that tenderness was not considered abnormal and concluded that there was "no evidence of hernia recurrence on the right and there is no evidence of a left inguinal hernia." The doctor also noted that "the patient has some confused impression that Dr. Shah told him that he would operate on his prostate at the same time that he did his inguinal hernia repair, which obviously, is not true." In July 1995, the RO continued its noncompensable rating for the hernia condition, denied service connection for a prostate condition as secondary to the inguinal hernia repair, concluded that the vasectomy was elective, and issued an SSOC. In August 1995, the appellant again stated that there was nothing further he wished to submit.

In February 1996, the BVA found that the PTSD claim was denied in July 1981 because the claim lacked a diagnosis of PTSD and no exposure to a stressor adequate to cause PTSD was established. The BVA also found that an attempt to reopen was denied in December 1988. The BVA noted that the appellant "became involved in treatment at the Princeton Vet Center," but found that reports indicated treatment "mainly for alcoholism" and there was not a diagnosis of PTSD. The BVA also found that the appellant's statements about his Vietnam experiences were cumulative of evidence previously of record. Therefore, the BVA refused to reopen the PTSD claim.

Regarding the hernia claim, the BVA found no objective evidence that the hernia had recurred, and found that there was competent medical evidence showing that "the tenderness noted is not an abnormal finding which would be considered a residual of the surgery." Therefore, an increased rating was denied.

In October 1996, while the appellant's claim was pending appeal to the Court, the Secretary modified 38 C.F.R. §§ 4.125 through 4.130 (regulations governing PTSD) and adopted a more liberal definition of stressors capable of producing PTSD. *See Cohen v. Brown,* 10 Vet.App. 128, 139–42 (1997).

## II. ANALYSIS

### A. PTSD

The appellant requests a remand of the PTSD claim based on the Secretary's failure to obtain and consider VA medical records from the Princeton Veterans Center which might provide new and material evidence sufficient to reopen his claim for service connection. The Secretary agrees that a remand is appropriate.

■ A final decision disallowing a claim cannot be reopened unless "new and material" evidence is presented or secured. *See* 38 U.S.C. §§ 5108, 7104(b); *Barnett v. Brown,* 83 F.3d 1380, 1384 (Fed.Cir.1996); *see also Moffitt v. Brown,* 10 Vet.App. 214, 226 (1997), *Evans v. Brown,* 9 Vet.App. 273, 282–83 (1996). Whether evidence is "new and material" is a question of law which this Court reviews de novo. *See Moffitt* and *Evans,* both *supra; Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). First, the evidence must be new rather than merely cumulative of other evidence that was then of record; second, materiality requires that the evidence be probative and that it be of such a weight that, when all the evidence of record is considered, there is at least a reasonable possibility that the outcome of the claim on the merits would be changed. *Moffitt* and *Evans,* both *supra.*

In this case, the last final disallowance of the appellant's PTSD claim occurred in October 1991, when the RO found that there was no diagnosis of PTSD. R. at 187. Therefore, in order to reopen the PTSD claim, there must have been new and material evidence presented which established a current, clear diagnosis of PTSD. *See Evans,* 9 Vet.App. at 286 (to be material, evidence must relate to basis for last final denial of claim).

In the decision currently on appeal, the BVA found that the appellant had still failed to provide a competent diagnosis of PTSD, and therefore found that no new and material evidence had been presented. R. at 11. This finding might have been justifiable if the BVA had reviewed and addressed all of the evidence of record. However, the BVA made its decision without obtaining and reviewing the records of the Princeton Veterans Center which were constructively part of the record. Without the benefit of all of the VA medical records from Princeton before it—some of which were created by the VA after the RO refused to reopen the appellant's PTSD claim in October 1991—the BVA concluded that the Princeton Veterans Center had treated the appellant primarily for alcoholism and that no diagnosis of PTSD was recorded. R. at 11, 161, 174, 258–59, 271, 345. This was error.

■ Under *Bell v. Derwinski,* 2 Vet.App. 611 (1992), the Secretary is deemed to have constructive knowledge of certain documents which are generated by VA agents or employees, including VA physicians. *Id.* at 612–13. If those documents predate the BVA decision on appeal, are within the Secretary's control, and could reasonably be expected to be part of the record, then "such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record." *Id.* at 613. "If such material could be determinative of the claim and was not considered by the Board, a remand for readjudication would be in order." *Id.*

■ In this case, the record refers to additional medical records which (1) were created before the BVA rendered its decision currently on appeal; (2) were created by VA at the Princeton Veterans Center, *see* DEPARTMENT OF VETERANS AFFAIRS, FEDERAL BENEFITS FOR VETERANS AND DEPENDENTS, 85 (1997 ed.) (Princeton Veterans Center identified as VA Facility); and (3) are reasonably expected to be part of the record because the missing records appear to be relevant to the appellant's ability to prove that he suffers from service-connected PTSD. Therefore, they are constructively part of the record on appeal. *See Bell, supra.* The Court renders no opinion as to whether the documents *actually constitute* new and material evidence,

but, because it appears that the Princeton Veterans Center records *may* be new and material evidence, the BVA's failure to have obtained and considered those records warrants remand to determine whether the claim should be reopened. *See id.*

### B. Vasectomy

▇▇ The appellant argues that the Secretary prematurely denied an increased rating for right inguinal hernia residuals because the Secretary failed to fully develop a claim that the appellant had a right vasectomy. Appellant's Brief at 23. Because there is no evidence to indicate that a vasectomy is a hernia residual and the applicable rating code, *see infra*, does not indicate such a relationship, this argument is actually an attempt to initiate a claim for a secondarily service-connected condition before the Court. In order to have jurisdiction over a claim, the Court must find that the appellant filed an NOD with respect to an adverse decision on a claim brought by the appellant, even if the adverse decision consisted of the Secretary's failure to adjudicate a claim reasonably raised. *See In the Matter of the Fee Agreement of Smith,* 10 Vet.App. 311, 313–14 (1997). In this case, the appellant never filed anything which could be reasonably construed as a claim for benefits for a right vasectomy, nor does Dr. White's mere observation that the reason for a vasectomy was unclear constitute a claim "reasonably raised." *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (quoting *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991)); *see also Suttmann v. Brown,* 5 Vet. App. 127, 132 (1993) (if a review of all documents "reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate ... "). Moreover, there is no jurisdiction-conferring NOD with respect to a vasectomy claim. *Cf. Ledford v. West,* 136 F.3d 776, 782 (Fed.Cir.1998). Thus, the Court lacks jurisdiction to review the vasectomy claim presented here for the first time and the appeal as to that issue is dismissed.

### C. Increased Rating for Hernia Residuals

▇▇ A decision by the BVA that an increased rating is not warranted is a finding of fact which this Court reviews under the clearly erroneous standard. *See Beyrle v. Brown,* 9 Vet.App. 377, 384–85 (1996). If there is a plausible basis for the factual determinations of the BVA, then the Court cannot overturn them. *See id.; Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

▇▇ Under 38 C.F.R. § 4.114, Diagnostic Code (DC) 7338, a 10% disability rating is awarded for a postoperative recurrent inguinal hernia if it is readily reducible and well supported by truss or belt. A 30% rating applies if the hernia is small, postoperative recurrent or unoperated irremediable, and is not well supported by a truss or not readily reducible. *Id.* In this case, Dr. White's report justifies the BVA's finding that the inguinal hernia had not recurred and there was no abnormal tenderness. Consequently, the BVA had a plausible basis for denying an increased rating for inguinal hernia residuals.

### D. Miscellaneous

▇▇ The appellant raises before the Court what is essentially an original CUE claim alleging error in that decision. The Court is without jurisdiction to decide the CUE claim because it was not raised below. *See Wilson (Richard) v. West,* 11 Vet.App. 253, 254 (1998) (Court lacks jurisdiction to address BVA CUE claims unless first adjudicated by BVA).

The appellant also requests remand of his PTSD claim based on theories of due process and the Secretary's duty to assist. Those issues are mooted by the remand which the Court will grant under *Bell,* and need not be addressed further. *See Aronson v. Brown,* 7 Vet.App. 153, 155 (1994) (where issue becomes moot, Court is divested of jurisdiction to consider it).

### CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the BVA had adequate reasons and bases for denying an increased disability rating for hernia residuals, but erred in failing to consider the Princeton Veterans Center records with regard to the PTSD claim.

The February 1996 decision.of the BVA is AFFIRMED IN PART to the extent that it denied an increased rating for hernia residuals, and is VACATED IN PART and REMANDED IN PART for reconsideration of the PTSD claim in conformity with this opinion, and the appeal regarding the vasectomy claim is DISMISSED.