Citation Nr: 1546213 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 07-37 926A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to a rating in excess of 40 percent for a right shoulder disability, characterized by recurrent dislocations and a post-surgical scar, to include on an extra-schedular basis pursuant to 38 C.F.R. § 3.321, from May 4, 2006. 

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected right shoulder disability, to include on an extra-schedular basis pursuant to 38 C.F.R. § 4.16(b). 


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

A. Barbier, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1962 to March 1964. 

This appeal to the Board of Veterans' Appeals (Board) arose from a February 2004 rating decision in which the RO increased the rating for the Veteran's service-connected right shoulder disability from 20 to 30 percent, effective October 23, 2003. In August 2004, the Veteran filed a notice of disagreement (NOD) with the disability rating assigned, and the RO issued a statement of the case (SOC) in April 2005. The Veteran filed a substantive appeal (via a VA Form 9, Appeal to Board of Veterans' Appeals) in May 2005. 

In September 2006, the RO granted a 40 percent rating for the right shoulder, effective May 24, 2006. 

In May 2010, the Veteran testified during a Board video-conference hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record. 

In September 2010, the Board bifurcated the claim for higher ratings for the right shoulder based on the staged ratings assigned before and since May 24, 2006 (see AB v. Brown, 6 Vet. App. 35, 38 (1993)); denied the claim for a rating in excess of 30 percent prior to May 24, 2006; and remanded the claim for a rating in excess of 40 percent for the right shoulder from May 24, 2006, along with a claim for a TDIU due to the right shoulder (see Rice v. Shinseki, 22 Vet. App. 447 (2009)). After further action was accomplished, each remaining claim was denied, and the matters returned to the Board. 


This appeal has been advanced on the Board's docket pursuant to 38 U.S.C.A. § 7107(a)(2) (West 2014) and 38 C.F.R. § 20.900(c) (2015). 

For reasons expressed below, the claims remaining on appeal are, again, being remanded to the agency of original jurisdiction (AOJ). VA will notify the Veteran when further action, on his part, is required.


REMAND

The Board's review of the claims file reveals that further AOJ action in this appeal is warranted. 

The Board notes that, in VA treatment records dated February 2012, it was noted that the Veteran had right shoulder surgery seven weeks prior at a private facility. This surgery was not reported or addressed in the VA examination dated in December 2014. Furthermore, in a May 2006 VA examination report, the Veteran was noted to have mild-to-moderate atrophy of the right deltoid muscle. The August 2009 VA examination did not address the effects of the Veteran's right shoulder disability on the shoulder muscles. In the December 2014 VA examination report, the VA examiner noted no muscle atrophy or muscle strength. 

In light of these inconsistencies with respect to muscle involvement as well as the December 2014 VA examiner's failure to address the Veteran's 2012 right shoulder surgery, the Board finds that the medical evidence currently of record is inadequate to resolve the higher rating claim, and that further VA examination to obtain appropriate medical findings and other information needed to evaluate the severity of his service-connected right shoulder disability is needed. See 38 U.S.C.A. § 5103A (West 20142); 38 C.F.R. § 3.159 (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006).. 

The Veteran is hereby notified that failure to report to the scheduled examination, without good cause, may well result in denial of the claim for increase. See 38 C.F.R. § 3.655(b) (2015). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. If the Veteran fails to report to the scheduled examination, the AOJ should obtain and associate with the claims file (a) copy(ies) of any correspondence referencing the date and time of the examination-preferably, the notice(s) of examination-sent to him by the pertinent medical facility. 

With regard to the Veteran's claim for TDIU due to the right shoulder-essentially, a component of the claim for increased rating-as the action requested on the higher rating claim may have a bearing on the TDIU, action on the TDIU claim, at this juncture, would be premature Cf. Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated). Hence, this matter must be remanded, as well. 

Prior to arranging for the Veteran to undergo VA examination, to ensure that all due process requirements are met, and the record is complete, the AOJ should undertake appropriate action to obtain and associate with the claims file all outstanding, pertinent records. 

As for VA records, the claims file currently includes treatment records from the Wilkes-Barre, Pennsylvania VA Medical Center (VAMC) dated through April 2015. Thus, more recent records from this facility may exist. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462 (1998); Bell v. Derwinski, 2 Vet. App. 611 (1992). Hence, the AOJ should obtain from the Wilkes-Barre VAMC (and any associated facility(ies)) all outstanding, pertinent records of evaluation and/or treatment of the Veteran dated since April 2015, following the procedures prescribed in 3.159(c) as regards requests for records from Federal facilities. 

The AOJ should also give the Veteran another opportunity to provide information and/or evidence pertinent to the claims remaining on appeal, explaining that he has a full one-year period for response. See 38 U.S.C.A. § 5103(b)(1) (West 2014); but see also 38 U.S.C.A. § 5103(b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). In its letter, the AOJ should specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, any outstanding, pertinent private (non-VA) records and/or employment records. 

In this regard, as noted above, VA treatment records dated in February 2012 note a right shoulder surgery seven weeks prior at a private facility, namely the Geisigner facility. These records have not been obtained and associated with the claims file. Furthermore, in an April 2011 VA treatment record, the Veteran reported treatment by a private doctor in Oldforge. Thus, the AOJ should specifically request information and authorization with respect to this treatment. 

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2013). 

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the action requested above, the AOJ should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the claims on appeal. Adjudication of the claims should include consideration of all additional evidence added to the record since the last adjudication. The AOJ should specifically consider whether "staged rating" of the right shoulder disability (assignment of different ratings for distinct periods of time, based on the facts found), pursuant to Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007), is warranted. 

Accordingly, these matters are hereby REMANDED for the following action:

1. Obtain from the Wilkes-Barre VAMC (and any associated facilities) all outstanding, pertinent records of evaluation and/or treatment of the Veteran, dated since April 2015. Follow the procedures set forth in 38 C.F.R. § 3.159(c) as regards requesting records from Federal facilities. All records and/or responses received should be associated with the claims file. 

2. Send to the Veteran and his representative a letter requesting that the Veteran provide sufficient information and, if necessary, authorization to obtain any additional evidence pertinent to the claims remaining on appeal that is not currently of record.

Specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, any outstanding, pertinent private (non-VA) records and/or employment records-to include medical records from the Veteran's private physician in Oldforge, as well as from the Geisigner facility ( specifically pertaining to a right shoulder surgery in 2012). 

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within a one-year period). 

3. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. All records/responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken. 

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA examination of his right shoulder disability by an appropriate medical professional. 

The contents of the entire claims file (both paperless and electronic), to include a complete copy of the REMAND, must be made available to the designated individual, and the examination report should include discussion of the Veteran's documented medical history and assertions. All appropriate tests and studies, to include x-rays, should be accomplished (with all results made available to the examining physician prior to the completion of his or her report), and all clinical findings should be reported in detail. 

The examiner must comment on the Veteran's 2012 right shoulder surgery and any effects therefrom on the severity of the Veteran's service-connected right shoulder disability since that time. 

The examiner should conduct range of motion testing of the right shoulder (expressed in degrees, with standard ranges provided for comparison purposes). The examiner should render specific findings as to whether, during the examination, there is objective evidence of pain on motion, weakness, excess fatigability, and/or in coordination associated with the right shoulder. If pain on motion is observed, the examiner should indicate the point at which pain begins. In addition, the examiner should indicate whether, and to what extent, the Veteran experiences likely functional loss of the right shoulder due to pain and/or any of the other symptoms noted above during flare-ups and/or with repeated use; to the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limited motion. 

The examiner should also comment on any muscle impairment of the Veteran's right shoulder and indicate whether such is medically related to, or indistinguishable from, the Veteran's service-connected right shoulder disability. 

The examiner should also render findings pertinent to any residual post-surgical scar, to include describing the scar, stating the size of the area affected (in inches or centimeters), whether the scar is deep or superficial, causes limitation of motion, is unstable, is painful on examination, or otherwise limits function of the affected part. 

The examiner should describe any other functional limits associated with the right shoulder. 

Based on consideration of the examination results and the Veteran's documented medical history and assertions, the examiner should clearly indicate whether the record reflects any increase(s) in severity of the right shoulder to an extent to support a higher rating at any time since May 24, 2006; and, if so, the examiner should indicate the approximate date of each such increase in severity; and provide an assessment of the severity on each date. 

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

5. If the Veteran fails to report to the scheduled examination, obtain and associate with the claims file (a) copy(ies) of any correspondence referencing the date and time of the examination-preferably, the notice(s) of examination-sent to him by the pertinent medical facility.

6. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998). 

7. After completing the requested actions, and any additional notification and/or development deemed warranted, readjudicate the claims on appeal.

If the Veteran fails, without good cause, to report to the scheduled examination, in adjudicating the claim for increase, apply the provisions 38 C.F.R. § 3.655(b); as appropriate. 

Otherwise, adjudicate each claim in light of pertinent evidence (to particularly include all that added to the record since the last adjudication of the claim) and legal authority (to include, with respect to the increased rating claim, consideration of whether staged rating of the disability, pursuant to Hart (cited above) is appropriate). 

8. If any benefit sought on appeal remains denied, furnish to the Veteran an appropriate supplemental statement of the case that includes clear reasons and bases for all determinations, and afford him the appropriate time period for response. 

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). The AOJ is reminded that this appeal has been advanced on the Board's docket. 



_________________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2015).