http://www.va.gov/vetapp16/Files3/1626397.txt

Citation Nr: 1626397 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 10-39 288 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Atlanta, Georgia

THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to diabetes mellitus.

2. Entitlement to a rating in excess of 60 percent for coronary artery disease (CAD) prior to August 1, 2011, and a rating in excess of 30 percent thereafter.

3. Whether the reduction in the disability rating for service-connected CAD from 60 percent to 30 percent, effective August 1, 2011, was proper.

4. Entitlement to a rating in excess of 20 percent for type II diabetes mellitus with complications of right and left upper extremity peripheral neuropathy.

5. Entitlement to a separate compensable rating for right upper extremity peripheral neuropathy.

6. Entitlement to a separate compensable rating for left upper extremity peripheral neuropathy.

7. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).

REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services

ATTORNEY FOR THE BOARD

K. Neilson, Counsel

INTRODUCTION

The Veteran had active military service from September 1966 to June 1968, and from August 1968 to August 1972. 

This appeal to the Board of Veterans' Appeals (Board) arose from August 2008 and August 2009 rating decisions 

In the August 2008 rating decision, the RO denied service connection for bilateral carpal tunnel syndrome; a rating greater than 20 percent for the Veteran's diabetes mellitus; and a TDIU. The RO also awarded service connection for peripheral neuropathy of the right lower extremity, rated as 10 percent disabling, effective from September 20, 2007, and increased the Veteran's evaluation of his service-connected CAD to 60 percent, effective from September 20, 2007. In September 2008, the Veteran filed a notice of disagreement (NOD) with the RO's denial of an increased rating for his diabetes mellitus and with the 60 percent rating assigned for his CAD. The Veteran also requested separate ratings for his right and left upper extremity peripheral neuropathy and left lower extremity peripheral neuropathy. An October 2008 report of contact also records the Veteran's disagreement with the RO's denial of a TDIU. In August 2009, the RO denied service connection for erectile dysfunction and hypertension. In September 2009, the Veteran disagreed with the RO's denial of those claims. 

In August 2010, the RO issued two statements of the case (SOCs), addressing the Veteran's claims for service connection for erectile dysfunction and hypertension and his claims for higher ratings for his CAD and diabetes mellitus, to include consideration of whether separate compensable ratings are warranted for peripheral neuropathy of the right and/or left upper and/or left lower extremities, as well as his claim for a TDIU. The same month, the Veteran filed a timely substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) for each claim. On his Form 9, the Veteran checked the box requesting a Board hearing before a Veterans Law Judge, sitting at the RO.

Also in August 2010, a Decision Review Officer proposed to reduce the Veteran's CAD rating from 60 to 30 percent. In May 2011, the RO reduced the Veteran's disability rating for CAD from 60 percent to 30 percent, effective August 1, 2011. 

In a July 2013 rating decision, the RO granted service connection for erectile dysfunction, and assigned a zero percent (noncompensable) rating, effective September 20, 2007. This action resolved the claim for service connection on appeal. See Grantham v. Brown, 114 F. 3d 1156, 1158 (Fed. Cir. 1997).

Also, in a July 2013 rating decision, the RO granted an earlier effective date of June 27, 2002, for the award of service connection for CAD and the assignment of an initial 30 percent rating, That rating decision was predicated on the targeted review pursuant to Nehmer v. United States Veterans Administration, 284 F.3d 1158, 1161 (9th Cir. 2002). The Veteran has not expressed disagreement with the initial rating and effective date assigned, and as such, these issues are not before the Board. 

The Veteran was scheduled to appear at a Board hearing before a VLJ at the RO in Decatur, Georgia, on August 25, 2015. The Veteran did not appear at the hearing, and has not requested for the hearing to be rescheduled. Thus, the hearing request is deemed to be withdrawn. See 38 C.F.R. § 20.704(d) (2015).

In November 2015, the Board remanded for additional development the Veteran's claims for service connection for hypertension and for higher ratings for CAD and diabetes mellitus, to include whether separate compensable ratings are warranted for peripheral neuropathy of the right and/or left upper and/or left lower extremities, and for a TDIU. The Board also determined that although the issue of the propriety of reduction of the Veteran's CAD rating was not specifically before the Board, the issue was part and parcel of the current appeal because the claim for an increased rating for CAD covered the period prior to, during, and after the reduction. See Hart v. Mansfield, 21 Vet. App. 505, 509 (2007) (holding that a review of an increased rating claim may take into account varying and distinct disability ratings throughout the entire time period the increased rating claim has been pending, to account for the dynamic nature of the disorder at issue). Accordingly, the Board took jurisdiction of the issue of whether the reduction was proper and remanded that matter as well. 

After accomplishing the requested development, the agency of original jurisdiction (AOJ) continued to deny (as reflected in a February 2016 supplemental SOC (SSOC)), the claims for service connection for hypertension and for increased ratings for CAD and diabetes mellitus, to include whether separate compensable ratings are warranted for peripheral neuropathy of the right and/or left upper extremity, as well as the Veteran's claim for a TDIU. The AOJ also found that the reduction of the Veteran's CAD rating from 60 to 30 percent was proper. These matters were then returned to the Board. 

Also, in a March 2016 rating decision, the AOJ awarded service connection for peripheral neuropathy of the left lower extremity, and assigned a 20 percent rating, effective September 20, 2007. To date, there is no indication that the Veteran has disagreed with any aspect of the AOJ's decision awarding a separate 20 percent rating for left lower extremity neuropathy associated with the Veteran's diabetes mellitus. Thus, although the AOJ's February 2016 SSOC included the issue of entitlement to a rating in excess of 20 percent for peripheral neuropathy of the left lower extremity, the issue is not currently before the Board. See Grantham, supra (where an appealed claim for service connection is granted during the pendency of the appeal, a second NOD must thereafter be timely filed to initiate appellate review of the claim concerning the compensation level assigned for the disability).

This appeal is now being processed utilizing the Veterans Benefits Management System (VBMS), a paperless, electronic claims processing system. There are additional documents stored electronically in Virtual VA. All records have been reviewed.

For reasons expressed below, the matters on appeal are, again, being remanded to the AOJ. VA will notify the Veteran when further action, on his part, is required.

REMAND

Unfortunately, the Board finds that further action on the claims on appeal is warranted, even though such will, regrettably, further delay an appellate decision on these matters. 

A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions, and imposes upon VA a concomitant duty to ensure compliances with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

In its November 2015 action, the Board noted the Veteran's contention that he had been receiving ongoing treatment for his claimed conditions and stated that, "concerning all issues on appeal, the record only contains VA treatment records only up to July 2009." The Board thus directed the AOJ to obtain from the Atlanta, Georgia, VA medical center (VAMC) (and any associated facilities) all outstanding records of treatment of the Veteran from July 2009 to the present. 

Review of the record following the November 2015 remand reveals that some records from the Atlanta VAMC have been associated with the Veteran's electronic claims folder. However, those records are dated only from October 2012 to September 2015. The AOJ's records request was not made part of the Veteran's claims folder, so the Board has no way of knowing whether the AOJ requested specifically all treatment record dated from July 2009 forward and was supplied only with records beginning in October 2012. In any event, a review of the VA treatment records dated from October 2012 to September 2015 suggests the existence of records dated from July 2009 to October 2012. Notably, an October 29, 2012, treatment entry states that it was a scheduled follow-up visit, which suggests earlier treatment necessitating a follow-up visit. The VA treatment records also suggest that the Veteran was variously seen from 2009 forward for blood glucose testing and the records note the Veteran's body mass index on dates prior to October 2012, which again suggests that the Veteran was seen at a VA facility between July 2009 and October 2012.

Accordingly, because the evidence suggests the existence of additional VA records for the period from July 2009 to October 2012, the Board cannot conclude that the AOJ fully or substantially complied with Board's November 2015 remand directive and another remand of the claims on appeal is required. Stegall, supra. The Board finds it necessary to remand all matters on appeal as a majority of the claims on appeal are for increased ratings and the Board has no way of knowing whether the information contained in the outstanding VA treatment records is or is not relevant to determining the severity of the Veteran's diabetes mellitus with complications of right and left upper extremity peripheral neuropathy and/or CAD, to include determining the propriety of the reduction, during the pendency of the claims. See Hart, supra (providing for staged ratings). 

As regards to the claim for service connection for hypertension, that matter was remanded in part for the AOJ to obtain a medical opinion as to whether it at least as likely as not that currently diagnosed hypertension was caused or aggravated (worsened beyond the natural progression) by the Veteran's service-connected diabetes mellitus. A review of the opinion provided shows that the examiner opined against a finding of aggravation based in part on the average blood pressure readings for the Veteran since being diagnosed with diabetes mellitus. Given that the outstanding VA treatment records may contain blood pressure readings that could change the examiner's opinion, the Board concludes that the outstanding records may also contain information relevant to the claim for service connection hypertension. The Board also notes that although the examiner provided an opinion as to the likelihood that the Veteran's hypertension is directly attributable to service and whether it was aggravated by the Veteran's diabetes mellitus, the examiner did not, as requested, provide a specific opinion as regard to whether the Veteran's hypertension was caused by the Veteran's diabetes mellitus. Although the evidence suggests that the Veteran's hypertension pre-existed the onset of his diabetes mellitus, which would weight against a finding of causation, for the sake of completeness and because the matter must be remanded, the Board finds that on remand, the AOJ should seek an addendum opinion as set forth in the remand directives below.

As regards to the Veteran's claim for a TDIU, under the applicable criteria, total disability ratings for compensation based upon individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. See 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2015). In exceptional circumstances, where the veteran does not meet the aforementioned percentage requirements, a total rating may nonetheless be assigned upon a showing that the individual is unable to obtain or retain substantially gainful employment. 38 C.F.R. § 4.16(b) (2015).

The Veteran has been awarded service connection for CAD (rated as 30 percent disabling from June 27, 2002, to December 5, 2005, as 60 percent disabling from December 5, 2005, to August 1, 2011, and as 30 percent disabling from August 1, 2011); diabetes mellitus with complication of right and left upper extremity peripheral neuropathy (rated as 20 percent disabling from May 8, 2001); peripheral neuropathy, left lower extremity, associated with diabetes mellitus (rated as 20 percent disabling from September 20, 2007); urinary incontinence, associated with diabetes mellitus (rated as 20 percent disabling from October 3, 2008); peripheral neuropathy, right lower extremity, associated with diabetes mellitus (rated as 10 percent disabling from September 20, 2007); tinnitus (rated as 10 percent disabling from May 2, 2007); and scars, bilateral hearing loss, and erectile dysfunction, each rated as noncompensable. The Veteran's combined rating is 20 percent from May 8, 2001; 40 percent from June 27, 2002; 70 percent from December 5, 2005; 80 percent from September 20, 2007; and 70 percent from August 1, 2011. Thus, it appears that the Veteran has met the objective, minimum percentage requirements for a schedular TDIU as of December 5, 2005. See 38 C.F.R. § 4.16(a).

The Veteran contends that his various service-connected disabilities prevent him from being employed, stating that he last worked full-time in June 2000. In the instant case, although some VA examiners have addressed the functional effects of some of the Veteran's various service-connected disabilities, the Board finds that further examination and medical opinion that clearly address the functional effects of all of the Veteran's service-connected disabilities, both individually and collectively, and the impact on the Veteran's employability, is needed to resolve the claim for a TDIU. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

The Board acknowledges that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical question, but rather a determination that must be made by an adjudicator. See Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (interpreting 38 C.F.R. § 4.16(a)). However, as medical examiners are responsible for providing a full description of the effects of disability upon the person's ordinary activity, see 38 C.F.R. § 4.10 (2015) and Floore v. Shinseki, 26 Vet. App. 376, 381 (2013), further medical findings as to the functional effects of individual, and combined, service-connected disabilities would be helpful in resolving the claim for a TDIU. 

On Remand, the Veteran should be provided a general medical examination in which the VA examiner discusses the functional effects of each of the service-connected disabilities, as well as the combined effects of all of the disabilities. The Veteran is hereby notified that failure to report to the scheduled examination, without good cause, may well result in denial of his claim for a TDIU, which is considered a claim for increase. See 38 C.F.R. § 3.655(b) (2015). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. If the Veteran fails to report to the scheduled examination, the AOJ should associate with the claims file any correspondence referencing the date and time of the examination-preferably, the notice(s) of examination-sent to him by the pertinent medical facility.

Prior to arranging for the Veteran to undergo any VA medical examination and/or obtaining the medical opinions sought, to ensure that all due process requirements are met, and that the record is complete, the AOJ should undertake appropriate action to obtain and associate with the claims file (in VBMS and Virtual VA) all outstanding, pertinent records. 

As discussed above, the record reflects that the Veteran has been receiving treatment from the Atlanta VAMC, to include various VA outpatient clinics, and records from that healthcare system dated through July 2009 and from October 2012 to September 2015 are associated with the file. This appeal is being remanded specifically for the AOJ to obtain any records of treatment for the period from July 2009 to October 2012. Additionally, more recent records may exist. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). Hence, the AOJ should obtain from the Atlanta VAMC all records of pertinent evaluation and/or treatment of the Veteran since September 2015, following the current procedures prescribed in 38 C.F.R. § 3.159(c) with regard to requests for records from Federal facilities. 

The AOJ should also give the Veteran another opportunity to provide additional information and/or evidence pertinent to the claims on appeal (particularly as regards private (non-VA) medical treatment), explaining that he has a full one-year period for response. See 38 U.S.C.A § 5103(b)(1). But see also 38 U.S.C.A. § 5103(b)(3) (West 2014) (amending the relevant statute to clarify that VA may make a decision on a claim before the expiration of the one-year notice period). 

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015). 

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted prior to adjudicating the claims on appeal.

Accordingly, these matters are hereby REMANDED for the following action:

1. Obtain from the Atlanta VAMC (and any associated facility(ies)) outstanding pertinent records of evaluation and/or treatment of the Veteran from July 2009 to October 2012, and from September 2015. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with respect to requesting records from Federal facilities. All records/responses received should be associated with the claims file.

2. Furnish to the Veteran and his representative a letter requesting that the Veteran provide additional information and, if necessary, authorization, to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran provide, or provide appropriate authorization to obtain, any outstanding, pertinent private (non-VA) medical records. 

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

3. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. All records/responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the 2016 VA examiner to provide an addendum opinion concerning the Veteran's hypertension claim. 

If that individual is no longer employed by VA or is otherwise unavailable, document that fact in the claims file, and arrange to obtain medical opinion based on file review (to the extent possible). Only arrange for the Veteran to undergo further VA examination, by an appropriate professional, if deemed necessary in the judgment of the individual designated to provide the addendum opinion.

The contents of the entire, electronic claims file (in VBMS and Virtual VA), to include a complete copy of this REMAND, must be made available to the designated individual, and the addendum opinion/examination report must reflect full consideration of the Veteran's documented medical history and assertions. 

The examiner should provide an opinion as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's hypertension was caused by the Veteran's service-connected diabetes mellitus.

The examiner should also provide an additional opinion as to whether any evidence associated with the electronic claims file (in VBMS and Virtual VA) since the Veteran was last examined warrants a change in the previous opinion that the Veteran's hypertension has not been aggravated (worsened beyond natural progression) by his service-connected diabetes mellitus. 

Complete, clearly-stated rationale for the conclusions reached must be provided.

5. After all records and/or responses received from each contacted entity have been associated with the claims file, and after adjudicating the Veteran's current pending claims, arrange for the Veteran to undergo a VA general examination, by an appropriate physician, at a VA medical facility.

The contents of the entire, electronic claims file (in VBMS and Virtual VA), to include a complete copy of this REMAND, must be made available to the designated physician, and the examination report should reflect full consideration of the Veteran's documented medical history and assertions. 

All indicated tests and studies should be accomplished (with all findings made available to the requesting examiner prior to the completion of his or her report), and all clinical findings should be reported in detail.

Based on review of the claims file and examination of the Veteran, the physician should describe the functional effects of each of the Veteran's service-connected disabilities on his activities of daily living, to include employment. 

If no single service-connected disability, alone, is deemed to functionally render the Veteran unemployable, the examiner must consider and discuss the combined effects of the Veteran's service-connected disabilities on his ability to perform the mental and physical acts required for gainful employment.

In particular, the examiner should describe what types of employment activities would be limited because of the service-connected disability(ies), what types of employment would not be limited (if any), and whether any limitation on employment is likely to be permanent.

In addressing the above, the examiner must consider and discuss all pertinent medical and other objective evidence, and all lay assertions. Additionally, the physician may take into consideration the Veteran's level of education, special training, and work experience, but not his age or any level of impairment cause by nonservice-connected disabilities.

All examiner findings/testing results, along with a complete, clearly-stated rationale for the conclusions reached, must be provided.

6. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall, supra.

7. After completing the requested actions, and any additional notification and/or development deemed warranted, adjudicate the claims on appeal in light of all pertinent evidence (to include all that added to the VBMS and/or Virtual VA file(s) since the last adjudication) and legal authority.

8. If any benefit sought on appeal remains denied, furnish to the Veteran and his representative an appropriate SSOC that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefit requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999)). 

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the United States Court of Appeals for Veterans Claims (Court) for additional development or other appropriate action 
must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 

_________________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the appeal. 38 C.F.R. § 20.1100(b) (2015).