﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/19 Archive Date: 02/25/19

DOCKET NO. 180906-68
DATE: February 26, 2019

REMANDED

1. Entitlement to service connection for an eye disability, is remanded.

2. Entitlement to increases in the “staged” ratings for a heart disability from August 2, 2013 to July 10, 2018, is remanded.

REASONS FOR REMAND

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision is written consistent with the new AMA framework. 

The appellant is a Veteran who served on active duty from August 1968 to June 1971. In April 2018, the Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. The July 2018 RAMP rating decision considered the evidence of record prior to issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Historically, a January 1972 final rating decision denied service connection for myopic astigmatism as a development abnormality. An August 2014 rating decision declined to reopen a claim of service connection for myopic astigmatism. A Statement of the Case (apparently issued in October 2016 but labeled April 24, 2017) expanded the issue to “service connection for a visual condition” and noted that service connection for a visual condition was reopened for a VA examination and medical opinion. In the July 2018 RAMP decision, the AOJ decided the matter on the merits. The Board find that, while not addressed explicitly in the July 2018 RAMP decision, the merits consideration of the claim constitutes a reopening of a prior denied claim and is a favorable determination. As the Board is bound by that determination the eye issue on appeal is characterized as entitlement to service connection for an eye disability. 

1. Entitlement to service connection for an eye disability.

On August 2016 VA eye conditions examination to ascertain the nature and etiology of the Veteran’s claimed eye disability, the optometrist’s diagnosis was “Longstanding, possible congenital, l[e]ft superior oblique palsy.” She noted that a September 1968 “exam (prior to entered active service date of 9/3/69)” noted left hypertropia and opined that the claimed condition was less likely as not related to service “as noted on eye exam, condition noted prior to or at entrance to service”; no further rationale was provided. In an October 2016 addendum, the examiner wrote, “The condition, which pre-existed service was not aggravated beyond normal progression during or by military service.” The Board finds the opinion (with addendum) inadequate for rating purposes, as it is based on an incorrect factual premise, does not apply the appropriate standard, and does not include rationale. Thus, there is a due process defect that requires corrective action.

On August 1968 service entrance examination, a refractive error was noted, but not oblique palsy or left hypertropia. As his service entrance examination is silent regarding oblique palsy or a hypertrophia, he is entitled to the presumption of soundness on entry to service with respect to that condition, which may only be rebutted by clear and unmistakable evidence of preexistence. And if the presumption of soundness on entry is rebutted, he is entitled to a further presumption that the disability was aggravated by service, which, likewise, may only be rebutted by clear and unmistakable evidence that there was no increase in disability or that any increase in disability was due to the natural progression of the preexisting condition. See Wagner v. Principi, 370 F.3d 1089, 1096-97 (Fed. Cir. 2004). The September 1968 (one month after entrance) record notes left “hypertropia condition [with] suppression response with or w/o Rx will not change.” 

A congenital or developmental abnormality is not of itself a compensable disability. 38 C.F.R. §§ 3.303(c), 4.9. However, service connection may be granted for disability due to aggravation of a congenital abnormality by superimposed disease or injury in service. See 38 C.F.R. § 3.303(c); Carpenter v. Brown, 8 Vet. App. 240, 245 (1995); VAOPGCPREC 82-90, 55 Fed. Reg. 45, 711 (1990). In the absence of superimposed disease or injury, service connection may not be allowed for refractive error of the eye, including myopia, presbyopia and astigmatism, even if visual acuity decreased in service, as this is not a disease or injury within the meaning of applicable legislation relating to service connection. 38 C.F.R. §§ 3.303(c), 4.9. 

Remand is required to obtain an adequate opinion that is based on a correct factual premise, applies the appropriate standard, and is accompanied by adequate rationale.

The record suggests that pertinent private treatment records appear outstanding. A March 2013 VA optometry record notes that the Veteran is a “new patient here for complete exam.” The Veteran reported that prior to being seen at VA, he was treated by Dr. Pomeranz for “decreased peripheral vision.” Complete treatment records from Dr. Pomeranz are not associated with the record, are likely to contain pertinent information, and must be sought. Sullivan v. McDonald, 815 F.3d 786 (Fed. Cir. 2016). 

2. Entitlement to increased staged ratings for a heart disability from August 2, 2013 to July 10, 2018.

The Veteran’s heart disability is currently rated 10 percent prior to October 7, 2015, and 60 percent from February 1, 2016. Total (convalescence) ratings were assigned for the Veteran’s heart disability from August 2, 2013 to November 1, 2013, and from October 7, 2015 to February 1, 2016. Therefore, those periods are not for consideration. 

On review of the record, the Board has found that there is a due process deficiency and that further development of the medical evidence is necessary to satisfy VA’s duty to assist the Veteran. 

A February 2016 VA cardiology record notes that, in February 2013, the Veteran underwent angioplasty and stenting at St. Mary’s Hospital, and in October 2015, he sustained a myocardial infarction and was treated at Renown Regional Medical Center. The current record contains treatment records from Renown, but not from St. Mary’s. Such records are pertinent evidence regarding the initial rating assigned for the Veteran’s heart disability. Additionally, in December 2016 and March 2017 statements, the Veteran reported that his cardiac care was transferred from Reno VAMC to Palo Alto VAMC due to their experience with aortic ectasia. Although the record contains a May 2016 initial cardiology consult record from Palo Alto VAMC, records of subsequent treatment are not associated with the record. See December 22, 2016 VA clinical record (noting that a VAMC Palo Alto cardiology nurse practitioner was still awaiting the results of his December 5, 2016 cardiology clinic visit and would “check in” with the Veteran in January 2017). As the records identified are likely pertinent to this claim (and because VA records are constructively on file), the outstanding treatment records must be obtained and considered. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

The matters are REMANDED for the following:

1. Secure for the record all outstanding (those not associated with record) records of VA evaluations and treatment the Veteran has received for his eyes/vision and his heart disability, specifically including all cardiology records from the Palo Alto VAMC. 

Also ask the Veteran to identify all private providers of evaluations and/or treatment he received for his eyes/vision and his heart disability, and to submit authorizations for VA to secure for the record complete clinical records of such evaluations and treatment from all providers identified, including specifically eye/vision records from Dr. Pomeranz, and cardiology records from St. Mary’s Hospital from 2013. Obtain those records. 

2. After the development requested above is completed, forward the Veteran’s record to an appropriate clinician for review and an advisory medical opinion. [If further examination of the Veteran is deemed necessary, such should be arranged.] 

On review of the record (and examination of the Veteran if deemed necessary), the consulting provider should:

(a) Identify (by diagnosis) each eye/vision disability entity found/shown during the appeal period, indicating regarding each, whether it is a congenital developmental abnormality or an acquired disability (including one superimposed on a congenital abnormality). 

(b) Identify the likely etiology for each non-congenital eye/vision condition entity diagnosed. 

Is there (i) clear and unmistakable (obvious, manifest, and undebatable) evidence that any currently diagnosed eye/vision condition preexisted the Veteran’s service (if so, identify the evidence) and (ii) if so, is there clear and unmistakable (obvious, manifest, and undebatable) evidence that the preexisting eye/vision condition WAS NOT aggravated (i.e., permanently worsened) during service (or that any increase was due to natural progress)? 

(c) If a congenital eye/vision abnormality is diagnosed, opine whether any acquired pathology has been superimposed on the abnormality, if so indicate when such occurred (i.e., whether or not during service), and describe the superimposed pathology (and related impairment) in detail.

(d) If there is no clear and unmistakable evidence that a currently diagnosed eye/vision condition preexisted service, is it at least as likely as not (a 50% or greater probability) that any such disability is directly related to (was first manifested in, or is otherwise etiologically related to) the Veteran’s active duty service?

 

GEORGE R. SENYK

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Dupont, Associate Counsel