# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1171

ROBBY TURNER, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 5, 2017                    Decided February 8, 2018)

*Amy F. Odom*, with whom *Alexis M. Ivory*, *Raymond J. Kim*, and *Barton F. Stichman*, all of Washington, DC, were on the brief for the appellant.

*Lindsay Gower*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and PIETSCH and ALLEN, *Judges*.

ALLEN, *Judge*: The question the Court addresses in this appeal is difficult and significant. To what extent, if any, may VA treatment records be "received" constructively under 38 C.F.R. § 3.156(b) such that the requirements of that regulatory provision are triggered? As we discuss in detail below, under § 3.156(b), if new and material evidence (which could include VA treatment records) is "received" during the one-year appeal period following a regional office (RO) decision, the RO is required to consider that evidence as having been submitted with the original claim and proceed accordingly. That means that the RO will essentially reconsider the denied claim with additional evidence. Until the RO does so, the denied claim remains pending. Thus, the determination of when such evidence is deemed "received" has important practical consequences.

As we will explain, we hold that VA treatment records may be "received" constructively under § 3.156(b); that is, actual receipt is not required. We further hold that to be constructively received, VA adjudicators within the Veterans Benefits Administration (VBA) must have sufficient knowledge, within the one-year appeal period following an RO decision, that the records exist, although they need not know the contents of such records. Applying these principles, the Court concludes that VA adjudicators had sufficient knowledge of the existence of the appellant's

VA treatment records within one year of the RO decision at issue such that those records were constructively received, triggering VA's obligation to comply with the requirements of § 3.156(b). Accordingly, the Court will set aside the January 2016 Board decision and remand this matter for VA to comply with its duties under 38 C.F.R. § 3.156(b) and take any other actions consistent with this decision.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

The appellant, Robby Turner, appeals through counsel a January 14, 2016, Board of Veterans' Appeals (Board) decision that denied his request to reopen a claim for service connection for epilepsy on the basis that no new and material evidence had been received. Record (R.) at 2-11. The appellant served in the U.S. Army from August 1967 to July 1969, including service in the Republic of Vietnam. R. at 489. Service treatment records indicate that he suffered from seizures in childhood and that he had epilepsy that was controlled by medication. R. at 379, 395. In September 2005, he filed a claim for service connection for epilepsy, R. at 446-63, which the RO denied in February 2006, finding that his epilepsy existed prior to service and that he had not furnished evidence showing a current diagnosis, R. at 425-32.

In July 2006, the appellant provided a statement to VA noting that he wished "to submit a service connect[ion] claim for post-traumatic stress disorder [(PTSD) and] epilepsy seizures." R. at 368. On an additional page, the appellant noted that he received "medication for depression" through the Little Rock, Arkansas, VA facility but that he had not "actually been diagnosed with PTSD." R. at 369. In August 2006, VA sent him a letter noting that service connection for epilepsy had previously been denied (in the February 2006 decision) and that new and material evidence was needed to reopen his claim. R. at 357-58. The record of proceedings before the Court contains no indication that the appellant replied to that letter.

During this time, the appellant continued to receive treatment at the Little Rock VA facility for his PTSD. In October 2007, VA treatment records were added to his claims file in connection with his PTSD claim. This evidence included a June 2006 record noting that his PTSD and depression were "intertwined with his epilepsy." R. at 323.

In June 2010, the appellant again filed a claim for service connection for epilepsy. R. at 296. In October 2010, the RO reopened the epilepsy claim but denied it on the merits, finding no evidence that his epilepsy was permanently worsened as a result of his military service. R. at 279-

84. In its list of evidence considered, the RO included treatment records from the Little Rock VA Medical Center (VAMC) from June 2006 to April 2007. R. at 283. The appellant filed a Notice of Disagreement in January 2011, R. at 277, and subsequently perfected his appeal to the Board.

In the January 2016 decision presently on appeal, the Board denied reopening the appellant's claim for service connection for epilepsy, finding that the February 2006 rating decision denied service connection because "there was no evidence that the condition permanently worsened as a result of service" and "there was no evidence of a current diagnosis or treatment for the condition." R. at 7. The Board found that evidence added to the record since the final February 2006 denial "does not address the unestablished facts as to whether his epilepsy permanently worsened as a result of service." *Id.* This appeal ensued.

## II. THE LEGAL LANDSCAPE AND THE PARTIES' ARGUMENTS

### A. The Legal Landscape

As a general matter, when an RO renders a decision on a claim and the claimant does not timely appeal, the decision becomes final. 38 U.S.C. § 7105(c); 38 C.F.R. § 20.302 (2017). A final, unappealed decision generally may only be revisited in limited circumstances. For example, a claimant may seek to reopen a final decision by submitting new and material evidence. 38 C.F.R. § 3.156(a) (2017). In certain circumstances, the submission of new and material evidence can abate the finality of a RO decision. One such situation is at the crux of this appeal and involves 38 C.F.R. § 3.156(b), which provides that "[n]ew and material evidence received prior to the expiration of the appeal period . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." New evidence is defined as "existing evidence not previously submitted to agency decision makers." 38 C.F.R. § 3.156(a). Material evidence is defined as "existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim." *Id.* "New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim." *Id.*

Under that provision, if an RO renders a decision but receives new and material evidence within the time the claimant has to appeal, the RO decision does not become final until the RO acts on the new evidence. As the United States Court of Appeals for the Federal Circuit (Federal

Circuit) held, when evidence is received during the appeal period, "VA must provide a determination that is directly responsive to the new submission and [determine whether it constitutes new and material evidence] and that, until it does so, the claim at issue remains open." *Beraud v. McDonald*, 766 F.3d 1402, 1407 (Fed. Cir. 2014).

## B. The Parties' Positions

The appellant argues that the Board clearly erred in finding that new and material evidence sufficient to reopen his claim for service connection for epilepsy had not been received. He first asserts that VA treatment records created within a year of the February 2006 rating decision vitiated the finality of that decision under § 3.156(b) and VA should have determined whether those records were new and material. Specifically, the appellant argues that VA constructively received the VA treatment records within the one-year appeal period and erred in failing to consider them. Thus, the appellant requests that the Court reverse the Board's decision and determine whether the VA treatment records were new and material to vitiate the finality of the February 2006 decision so that it remained pending, pursuant to 38 C.F.R. § 3.156(b).

Alternatively, the appellant argues that, pursuant to 38 C.F.R. § 3.156(a), the Board erred in finding that evidence received after the expiration of the one-year period was not new and material, sufficient to reopen his epilepsy claim. He asserts that "there can be no dispute that VA concluded in the February 2006 rating decision that there was no evidence of a current disability of epilepsy, and the Board's finding to the contrary is clearly erroneous." Appellant's Brief (Br.) at 12. In addition to the June 2006 VA treatment records, the appellant argues that a July 2010 private doctor's statement establishes a diagnosis of epilepsy, which relates to the current disability element that was found lacking in the February 2006 decision. At a minimum, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for its finding that evidence of a diagnosis of epilepsy was not new and material.

The Secretary concedes that remand is warranted for the Board to provide an adequate statement of reasons or bases for its determination that new and material evidence has not been submitted sufficient to reopen the claim under § 3.156(a), because it failed to discuss the June 2006 medical records that indicated that the appellant's PTSD and epilepsy were intertwined. The Secretary argues, however, that those medical records were not received until October 2007, after the one-year period had ended. He also asserts that constructive receipt does not apply in the context of § 3.156(b) because the plain language of the regulation requires actual receipt of new

4

and material evidence within the one-year period. The Secretary further contends that applying constructive receipt in this context would impose a significant burden on VA by requiring it to continuously comb through VA treatment records every time a claim is adjudicated to determine whether readjudication of those claims is required.

### III. ANALYSIS

There are a number of moving parts in this complex appeal. We briefly provide a roadmap for what will follow. We begin by considering the text of § 3.156(b) and, in particular, whether the term "received" is ambiguous. We conclude that the regulatory language is susceptible to more than one meaning. Having done so, we turn to resolving the ambiguity. In this regard, we first determine that the Secretary is not entitled to deference with respect to his suggested interpretation of the provision. Engaging in our own independent review, we conclude that the term "received" includes constructive receipt, at least as to VA treatment records. Thereafter, we explain when VA treatment records will be deemed constructively received under § 3.156(b). Finally, we apply our holdings to the appellant's case. We conclude that his VA treatment records were constructively received within one year of the RO's February 2006 decision and that the Board erred in not ensuring compliance with § 3.156(b). Accordingly, we set aside the decision on appeal and remand the matter for further proceedings.

A. The Meaning of 38 C.F.R. § 3.156(b)

There is common ground between the parties on the relevant facts: (1) the RO issued its rating decision denying service connection for epilepsy in February 2006; (2) the appellant received medication for depression at a VA facility in July 2006, within the one-year appeal period contemplated by § 3.156(b); but (3) the records related to that treatment did not become a part of the claims file until October 2007, after the one-year appeal period expired. The disagreement between the parties is whether those records were "received" by VA sufficient to require that it determine whether they constitute new and material evidence under § 3.156(b).

If the meaning of "received" is clear from the language of the regulation, then that meaning controls and "that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute [or regulation] is its language."); *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015) ("Regulatory interpretation begins

with the language of the regulation, the plain meaning of which is derived from its text and its structure."). If, however, the language is ambiguous, then the Court must defer to the agency's interpretation of its regulation unless that interpretation is inconsistent with the language of the regulation, is otherwise plainly erroneous, or does not represent the agency's considered view on the matter. *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Bowles v. Seminole Rock Sand Co.*, 325 U.S. 410, 414 (1945); *Smith v. Nicholson*, 451 F.3d 1344, 1349-50 (Fed. Cir. 2006).

### 1. The Ambiguity of "Received"

We hold that the word "received" in § 3.156(b) is ambiguous. Both this Court and the Federal Circuit have previously recognized, when considering provisions in Titles 10 and 38, that the term "received" can be ambiguous. For example, in *Majeed v. Principi*, the Court held that the word "received" in 10 U.S.C. § 1174(h)(2), governing separation pay bonuses, did not refer to the amount actually received by a veteran but rather included relief from debt. 16 Vet.App. 421, 429-30 (2002). Perhaps even more instructive given the present case, the Federal Circuit held that the common law mailbox rule applied in the context of filing a Notice of Appeal with this Court pursuant to 38 U.S.C. § 7266(c). *Rios v. Nicholson*, 490 F.3d 928, 931-32 (Fed. Cir. 2007). That statutory provision provides that "[a] notice of appeal shall be deemed to be received by the Court . . . [o]n the date of the United States Postal Service postmark stamped on the cover in which the notice is posted." 38 U.S.C. § 7266(c). The Federal Circuit found that the word "received" in section 7266 did not mean only actual receipt by the Court but also encompassed delivery to the mailbox. *Rios*, 490 F.3d at 931-32. Not to put too fine a point on it, "received" just doesn't always mean "received" in the most literal sense.

This Court and the Federal Circuit are not alone in finding "received" or its kin to be less than clear under federal law. The United States Court of Appeals for the Fourth Circuit held that "[a]s a general matter, 'receipt' can reasonably be understood to include not only actual, but constructive receipt." *Kennedy v. Shalala*, 995 F.2d 28, 29-30 (4th Cir. 1993). In that case, the court held that a provision of the Social Security Act, requiring that Supplemental Security Income benefits be reduced by the amount of unearned income to include "any payments *received* as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions," included an augmented benefit received by the plaintiff's spouse for her support. 42 U.S.C. § 1382a(a)(2)(B) (emphasis added). The Fourth Circuit found the government's position—that

although this augmented benefit was not actually received by the plaintiff, it was constructively received–was a reasonable interpretation of the ambiguous provision. *Kennedy*, 995 F.2d at 29-30.

Additionally, the United States Court of Appeals for the Second Circuit held that the word "received" in a bankruptcy statute was ambiguous. *Community Bank, N.A. v. Riffle*, 617 F.3d 171 (2d Cir. 2010). Specifically, it concluded that 11 U.S.C. § 521(a)(1)(B)(iv), which requires a bankruptcy debtor to file "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor," was unclear and ultimately held that the word "received" modified the word payment such that the statute required the debtor to file credible evidence that set forth all "payment received" from an employer in 60 days prior to filing petition. *Id.* at 175-76.

Of course, the mere fact that a word or phrase in one statute or regulation is ambiguous does not necessarily mean that the word or phrase is ambiguous in another. It certainly lends support to the notion of ambiguity, however. And that conclusion is only underscored when one considers § 3.156 more broadly. *See King v. Shinseki*, 26 Vet.App. 484, 488 (2014) (holding that words should not be read in isolation but rather read in the context of the regulatory structure and scheme, when assessing the meaning of a regulation). In *Dunn v. West*, for example, this Court considered whether Mr. Dunn's VA treatment records should have been considered "constructively" part of the record under § 3.156(a) for purposes of a new and material evidence review even though the Board did not actually possess them. 11 Vet.App. 462, 466 (1998). The Court concluded that the records would be deemed to be before the Board in that situation even though the regulation used the term "submitted" because they were "created by VA" prior to the Board decision. *Id.* The fact that the Court recognized that under subsection (a) there is ambiguity in terms of what is or is not before the adjudicator is instructive in terms of answering that same question under subsection (b). At a minimum, it lends support to the ambiguity in that provision about that question.

As noted above, subsection (a) of § 3.156 requires that evidence be "submitted." Subsection (c), which deals with service department records, provides that "at any time after VA issues a decision on a claim, if VA *receives or associates* with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim." 38 C.F.R. § 3.156(c)(1) (emphasis added). Thus, "received" means something different from "submitted," yet must be more than merely

"associated" with a claims file. *See Yonek v. Shinseki*, 722 F.3d 1355, 1359 (Fed. Cir. 2013) ("'Where an agency includes particular language in one section of a regulation but omits it in another . . . ' it is generally presumed that the agency acts intentionally and purposely in the disparate inclusion or exclusion.'" (brackets omitted) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993))); *see also Tropf*, 20 Vet.App. at 321 n. 1 ("[W]hen a statute or regulation omits a term in one place that is used in other places, that omission should be regarded as intentional and given effect."). Although the full context of § 3.156 helps to rule out several potential meanings of the word "received," it hardly provides clarity as to the *right* meaning. Therefore, the term's ambiguity remains.

The Secretary attempts to avoid this conclusion by citing dictionaries. For example, he argues that the regulation clearly means actual receipt, given the definition of "receive," meaning "to take into one's possession" or "to have delivered or brought to one." Secretary's Supplemental Br. at 4. Dictionaries are certainly helpful when defining words, and it is clearly appropriate to consider them when interpreting statutes and regulations. *Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) ("It is commonplace to consult dictionaries to ascertain a term's ordinary meaning.") (citing *United States v. Rodgers*, 466 U.S. 475, 479 (1984)). But dictionaries cannot make up for the powerful indications of ambiguity surrounding § 3.156(b). Thus, we must decide what "received" means in that regulation.

### 2. The Secretary's Interpretation is Not Entitled to Deference

Finding ambiguity in a statutory or regulatory phrase is only the beginning of the analysis. Next, we must determine which competing meaning of an ambiguous phrase should apply. Because, in this instance, the Secretary has taken a position about the meaning of receipt in § 3.156(b), the Court is generally required to give judicial deference to an agency's interpretation of its own ambiguous regulation so long as that suggested interpretation is not inconsistent with the text of the regulation or otherwise plainly erroneous or does not represent the agency's considered view on the matter. *See Auer*, 519 U.S. at 461-62. This is so even when that interpretation is advanced in a legal brief. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). And, generally, an agency may change its policy, as "the very basic tenet of administrative law [is] that agencies should be free to fashion their own rules of procedure." *Perez v. Mortgage Bankers Assn.*, 135 S.Ct. 1199, 1207 (2015) (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549 (1978)). However, when that

happens, the agency must articulate a reasoned basis for the change in policy. *See Michigan v. E.P.A.*, 135 S.Ct. 2699 (2015). Balancing the appropriate level of agency deference is especially complicated in the context of veterans law, where we must also be faithful to the longstanding principle of resolving interpretative doubt in the veteran's favor. *See Johnson v. McDonald*, 762 F.3d 1362, 1368 (Fed. Cir. 2014) (O'Malley, concurring) (quoting *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S.Ct. 2254, 2266 (2011) (Scalia, J., concurring)); *see also Gardner*, 513 U.S. at 118.

The Court need not defer to the Secretary's interpretation of 38 C.F.R. § 3.156(b) in this case because it is not clear what the definitive position of the Secretary is on the question. The Secretary's counsel in this appeal supports the position that actual receipt of evidence is required by citing to the regulatory history of § 3.156(b) and asserting that constructive receipt was not applicable at that time and did not become applicable until 1992 with the Court's decision in *Bell v. Derwinski*, 2 Vet.App. 611 (1992). In advancing his position, he also cited to and submitted to the Court a 1995 General Counsel (GC) opinion. VA Gen. Coun. Prec. 12-95 (May 10, 1995). However, the GC opinion appears to contradict the Secretary's litigation position in this appeal. Specifically, the GC opinion states that the "record in *all* AOJ [(agency of original jurisdiction)] decisions rendered on or after July 21, 1992, will thus be deemed to include all pertinent VA medical evidence in existence on the date of the AOJ decisions, *regardless of whether such evidence was actually in the records before the AOJ*." *Id.* at 7 (emphasis added). In other words, the GC opinion appears to accept the concept of constructive receipt.

Because there appears to be a discrepancy between the availability of constructive possession and receipt under the law from the Secretary himself, the Court determines that there is no single position to which to defer under *Auer*. To be clear, this is not a situation of an agency changing positions. The Secretary certainly may change his position, even in litigation, so long as his change is considered and well-reasoned. *See, e.g., Michigan*, 135 S.Ct. at 2699. The problem here is that it is not clear that the Secretary is changing his position. After all, a formal GC opinion binds the agency and it does not seem that an assistant general counsel can countermand a formal GC opinion so easily.[1] In the end, the Secretary's position is confused at best and is certainly not

---

[1] GC opinions are binding on agency adjudicators, including the Board. 38 U.S.C. § 7104(c) ("The Board shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the *precedent opinions of the chief legal officer of the Department*." (emphasis added.)); *Hornick v. Shinseki*, 24 Vet.App. 50, 52-53 (2010).

well-reasoned, even assuming counsel in this case had the authority to alter that interpretation. Thus, the Court owes no deference to the interpretation advanced by the Secretary in this matter.

B. Section 3.156(b) and Constructive Receipt

Having determined that "received" in § 3.156(b) is ambiguous and that the Secretary's position is not entitled to deference, the Court must undertake its own analysis of the term to determine if it includes constructive receipt. The Court holds that it does.

We begin where constructive possession began in the VA context, *Bell v. Derwinski.* In *Bell*, the Court held that "the Secretary had constructive, if not actual, knowledge" of records generated by VA and "as a matter of law, the [records] were 'before the Secretary and the Board' when the [Board] decision was made." 2 Vet.App. at 613. The Court held that the Board is considered aware of evidence in VA's possession when "'the Board is on notice as to the possible existence and relevance'" and the records "could reasonably be expected to be a part of the record." *Id.* at 612 (quoting *Murincsak v. Derwinski*, 2 Vet.App. 363, 372-73 (1992)); 613. As discussed above, the General Counsel recognized that the constructive possession rule articulated in *Bell* would apply to *all* AOJ decisions rendered after July 1992, when *Bell* issued.

After *Bell*, the Court continued to develop the principle that documents could be deemed constructively before VA adjudicators in various situations. In *Damrel v. Brown*, 6 Vet.App. 242 (1992), the Court held that *Bell* did not apply in a case involving revision based on clear and unmistakable evidence (CUE) because the appellant's claim predated *Bell*. The GC opinion clarifying that *Bell* applied to all cases from the date of its issuance, July 1992, was in response to *Damrel* and implemented the decision. The Court subsequently found that *Bell* applied when determining the proper records before the Court based on what evidence was before the Board. *See Bowey v. West*, 11 Vet.App. 106 (1998); *see also Goodwin v. West*, 11 Vet.App. 494 (1998). Perhaps more significant to the present case, and as discussed above, the Court held that *Bell* applied to a request to reopen a claim based on new and material evidence pursuant to § 3.156(a). *See Dunn*, 11 Vet.App. at 462.

Given the application of constructive possession in these various contexts, as well as VA's intention to apply *Bell* to all future cases, as articulated in the GC opinion, it seems clear to the Court that constructive receipt applies in the context of § 3.156(b). *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013) ("In construing regulatory language, we must read

the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning.").

Finally, the Court notes that basic fairness—or perhaps common sense—dictates that constructive receipt applies to § 3.156(b). It would be quite strange to pretend categorically that one part of VA does not have records that a different part of the agency indisputably does have. However, as will be discussed further below, it is not absolute that every document created by different parts of VA are constructively possessed by all parts of VA in the context of § 3.156(b). There must be some triggering principle involved. The Court turns to that question next.

### C. Triggering Constructive Receipt

The Secretary argues, in part, that the Court should reject the appellant's position about constructive receipt because of the implications on VA. Secretary's Supplemental Br. at 9-12. The impact of applying the correct legal rule on an agency is not a reason to turn a blind eye to the law. Nevertheless, the practical impact of a legal rule can certainly frame how that legal rule is applied. Accordingly, the Court now considers what is required to trigger the constructive receipt of VA treatment records under § 3.156(b).

The appellant argues that constructive receipt of VA treatment records is, essentially, co-extensive with the creation of records by VA. *See* Appellant's Supplemental Br. at 4-6. The Court affirmatively rejects this argument. The Court finds that something more than mere creation is required. The question then becomes, at what point does constructive receipt take place? To frame this question, consider the mailbox rule concerning the filing of a Notice of Appeal in this Court. As discussed above, the Federal Circuit held that a Notice of Appeal could be "received" at the Court within 120 days of a Board decision even when, in reality, it was not. *Rios*, 490 F.3d at 931-32. The Federal Circuit held that the rule deeming something as "received" was triggered by a postmark. *Id.*

Relevant to the issue before us, in *Bell*, the Court articulated that VA is considered aware of VA-generated evidence when put "on notice as to its possible existence and relevance" and when such records "could reasonably be expected to be a part of the record." 2 Vet.App. at 612, 613 (internal citation omitted). In *Bowey v. West*, the Court held that radiation exposure reports referenced in expert opinion letters were not constructively of record based on the "reasonably expected" standard articulated in *Bell*. 11 Vet.App. at 109. The Court held that the reports' connection to the appellant's case was "too tenuous." *Id.* In *Goodwin v. West*, the Court further

limited constructive possession, finding that documents generated by VA but relating to another veteran were not constructively before VA in the appellant's case because such records "could not 'reasonably be expected to be a part of the record.'" 11 Vet.App. at 496, quoting *Bell*, 2 Vet.App. at 613.

In *Dunn*, following *Bell*, the Court held that additional VA medical records were reasonably expected to be part of the record "because the missing records appear to be relevant to the appellant's ability to prove he suffers from service-connected PTSD," were created by VA, and were created before the Board rendered its decision. 11 Vet.App. at 466. Finally, in *Monzingo v. Shinseki*, the Court articulated two rules for determining when a document is constructively before the Board. The first, specific rule requires that a document be clearly generated by VA or submitted to VA by the appellant. 26 Vet.App. 97, 102 (2012).The second, broader rule is that a document be within the Secretary's control and "reasonably expected to be part of the record." *Id.* The Court noted that a document generated by VA would not be considered constructively before the Board "unless the document has a direct relationship to the claimant's appeal." *Id.*

These cases must be applied in the context of a recent decision by the Federal Circuit, in which it held that VA's duty to assist as articulated in § 3.159(c)(3) is not limited to obtaining *relevant* VA treatment records. *Sullivan v. McDonald*, 815 F.3d 786, 791 (Fed. Cir. 2016). The Federal Circuit held that the only limitation on the duty to assist is provided by § 3.159(d), namely that VA will refrain from obtaining evidence if "'there is no reasonable possibility that any assistance VA would provide to the claimant would substantiate the claim.'" *Id.* at 792, quoting 38 C.F.R. § 3.159(d). Based on our interpretation of *Sullivan*, we may not impose a relevance requirement in our constructive receipt analysis.[2] Thus, we proceed to craft our triggering standard in a way that is faithful to both our precedent on constructive possession or receipt as well as the Federal Circuit's decision in *Sullivan*.

The Court holds that constructive receipt in the context of 38 C.F.R. § 3.156(b), dealing exclusively with VA treatment records, requires knowledge by VA adjudicators at the VBA of the existence of those VA treatment records within the one-year appeal period. In determining whether

---

[2] We want to be clear that, at some point, something akin to relevance does matter under § 3.156(b). That occurs when VA considers whether evidence "received" in the appeal period is "material." Only if the received evidence is new and material must the evidence be included with the evidence present for the original adjudication. But this materiality (or relevance) is not appropriate as a trigger to constructive receipt as we understand the logic of *Sullivan*.

constructive possession has been triggered as to VA treatment records, those records must have been generated by a VA medical facility and VA adjudicators at the VBA must have sufficient knowledge that such records exist. In addition, based on the Federal Circuit's decision in *Sullivan*, VA's constructive receipt of such records is not tied to their relevance to the claim.

The remaining question is what level of knowledge of existence is required to trigger constructive receipt. Initially, we note that this is a factual determination that the Board must address. As guidance for making that determination, we turn to the law governing the duty to assist. The duty to assist continues until a claim becomes final. *See* 38 C.F.R. § 3.160(c), (d) (2017) (defining a pending claim as one that has not been finally adjudicated and a finally adjudicated claim as one in which the period of time to file an NOD has expired or disposition in appellate review has occurred). By statute, the Secretary is required to assist a claimant in obtaining "[r]ecords of relevant medical treatment or examination of the claimant at Department health-care facilities or at the expense of the Department, if the claimant furnishes information sufficient to locate those records." 38 U.S.C. § 5103A(c)(1)(B) (2017).[3] Section 3.159(c) also provides that a "claimant must provide enough information to identify and locate the existing records, including the person, company, agency, or other custodian holding the records; the approximate time frame covered by the records; and, in the case of medical treatment records, the condition for which treatment was provided." Furthermore, in *Sullivan*, the Federal Circuit also noted the limitation on VA's duty to assist in associating VA treatment records with a claims file, that those records be "sufficiently identified." *Sullivan*, 815 F.3d at 793. These duty to assist principles provide useful guideposts for making the constructive receipt determination.

The Court makes one final point regarding VA's duties once VA has constructive receipt of VA treatment records. At that time, VA must determine whether the VA treatment records are new and material such that 38 C.F.R. § 3.156(b) applies and finality of the prior adjudication is vitiated. A determination that constructive receipt applies does not automatically mean that the claimant is granted benefits, only that VA must make a new and material evidence determination.

---

[3] 38 U.S.C. § 5103A was amended in August 23, 2017, by the Veterans Appeals Improvement and Modernization Act of 2017, to include subsection (e) that provides that the duty to assist "shall apply only to a claim, or supplemental claim, for a benefit under a law administered by the Secretary *until the time that a claimant is provided notice of the agency of original jurisdiction's decision* with respect to such claim." Pub. L. 115-55, § 2(c) (August 23, 2017) (emphasis added). This amendment does not apply here. The Court offers no opinion on how the change in regulation would affect a similar case in the future.

If the evidence is new and material, then it should be added to the evidence of record at the time of the initial decision, and the claim should, thereafter, be readjudicated.

### D. Application of Constructive Receipt to this Appeal

In the present case, the appellant submitted a statement to the RO in July 2006, noting, "I receive medication for depression through the Mental Health Clinic at the VAMC [North] Little Rock." R.at 369. The Court holds that this statement was sufficient to provide VA adjudicators at the VBA with knowledge of the existence of the appellant's VA treatment records to trigger constructive receipt. The appellant identified a specific VA facility, that he received some type of treatment there, and that such treatment was current. Although the Court acknowledges that there is no bright line rule as to what constitutes sufficient knowledge of the existence of VA treatment records, *see Gagne v. McDonald*, 27 Vet.App. 397, 402 (2015), identification of a time, place, and nature of activity–medical treatment–are factors to be considered. *Cf.* 38 C.F.R. § 3.159(c)(2)(i). The Secretary argues that the appellant's statement did not indicate the relevance of the VA treatment records to his epilepsy claim. *See* Secretary's Br. at 7. However, as discussed above, the Federal Circuit made clear in *Sullivan* that relevance of VA treatment records is not to be considered when determining VA's duty to consider those records. 815 F.3d at 791.[4]

The Court acknowledges that the October 2010 RO decision listed the June 2006 VA treatment records as evidence considered in finding that new and material evidence had been submitted sufficient to reopen the appellant's epilepsy claim. However, the Board's discussion referred only to a 2004 private doctor's statement. R. at 283-84. Furthermore, the Board in the January 2016 decision on appeal completely failed to mention the VA treatment records, as conceded by the Secretary. Neither of these decisions, currently the subject of this appeal, is a final

---

[4] At oral argument the parties discussed the RO adjudicators' access to the Compensation and Pension Record Interchange (CAPRI) system to determine whether VA treatment records exist. The M21-1 Adjudication and Procedures Manual identifies CAPRI as "an automated information system that provides authorized users read-only access to Veterans' medical records created and maintained by Veterans Health Administration (VHA) facilities." M21-1 Adjudication Procedures Manual, Part III, Subpart v, Chapter 6, Section G. The Court holds that VA's use of electronic records and the adjudicators' ability to identify the existence of VA treatment records through CAPRI is another factor that weighs in favor of constructive receipt.

Another provision of the M21-1 requires adjudicators to "perform an enterprise search in CAPRI" and "associate any relevant records with the claims folder" even if "a Veteran does not identify treatment at a specific VA facility." M21-1, Part III, Subpart iii, Chapter 1, Section C, Subsection g. This provision suggests that VA does not even need knowledge of existence of records; however, the Court holds that this provision goes beyond the duty to assist as articulated in the statutes and regulations, and it is the duty to assist that defines VA's obligations in the present case.

14

decision that somehow subsumed the pending February 2006 decision. *See, e.g.*, 38 C.F.R. § 20.1104 (2017) ("When a determination of the agency of original jurisdiction is affirmed by the [Board], such determination is subsumed by the final appellate decision."). Section 3.156(b) entitles the appellant to a review of the evidence of record at the time of the original decision plus any new and material evidence received within the one-year appeal period–in this case, the evidence before the RO at the time of the February 2006 rating decision plus the June 2006 VA treatment records constructively before the RO during the one-year appeal period. *See Beraud*, 766 F.3d at 1407. Thus, on remand, if the Board determines that the VA treatment records from June 2006 constitute new and material evidence, the finality of the February 2006 rating decision is vitiated and the Board must proceed to include that new evidence with the evidence of record at the time of the February 2006 decision to decide the appellant's claim.

In sum, the Court holds that the appellant provided the RO with sufficient knowledge of the existence of VA treatment records to trigger constructive receipt of those records to warrant consideration of his claim under 38 C.F.R. § 3.156(b). Remand is therefore warranted for the Board to consider whether the VA treatment records constructively before VA during the one-year appeal period constitute new and material evidence sufficient to vitiate the finality of the February 2006 rating decision. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see also Tucker v. West*, 11 Vet.App. 369, 374 (1998) (Remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the records is otherwise inadequate."); *see also Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for factfinding").

Given this disposition, the Court will not address the remaining arguments and issues that the appellant has raised. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001). On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B and 7112.

## IV. CONCLUSION

After consideration of the foregoing, the Court SETS ASIDE the January 14, 2016, Board decision and REMANDS for further proceedings consistent with this decision.