﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 190725-16104
DATE: September 30, 2020

ORDER

New and relevant evidence having been submitted, the application to readjudicate the previously denied claim of entitlement to service connection for Raynaud's disease is granted, and the claim will be readjudicated.

Entitlement to an initial rating higher than 0 percent for left ear hearing loss is denied.

REMANDED

Entitlement to service connection for Raynaud's disease is remanded.

Entitlement to service connection for unspecified joint disabilities, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for neuropathy of the right upper extremity, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for neuropathy of the left upper extremity, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for neuropathy of the right lower extremity, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for neuropathy of the left lower extremity, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for a gall bladder disability, claimed as secondary to Raynaud's disease, is remanded.

Entitlement to service connection for a low back disability is remanded.

Entitlement to service connection for a right ankle disability, claimed as due to physical training, is remanded.

Entitlement to service connection for a left ankle disability, claimed as due to physical training, is remanded.

Entitlement to service connection for bilateral Morton's neuroma, claimed as due to physical training, is remanded.

Entitlement to service connection for bilateral plantar fasciitis, claimed as due to physical training, is remanded.

Entitlement to service connection for bilateral flatfeet is remanded.

Entitlement to service connection for a right knee disability, claimed as secondary to bilateral flatfeet, is remanded.

Entitlement to service connection for a left knee disability, claimed as secondary to bilateral flatfeet, is remanded.

Entitlement to service connection for right shin splints, claimed as secondary to bilateral flatfeet, is remanded.

Entitlement to service connection for left shin splints, claimed as secondary to bilateral flatfeet, is remanded.

Entitlement to service connection for a migraine headache disability is remanded.

Entitlement to service connection for urinary incontinence (fistula) is remanded.

Entitlement to service connection for sinusitis is remanded.

Entitlement to service connection for allergies is remanded.

Entitlement to service connection for tinnitus is remanded.

Entitlement to service connection for right ear hearing loss is remanded.

FINDINGS OF FACT

1. A September 2000 Agency of Original Jurisdiction (AOJ) decision denied a claim for service connection for Raynaud’s disease.

2. In March 2018, the Veteran filed a VA form 21-0966, Intent to File a Claim for Compensation and/or Pension, or Survivors Pension and/or DIC. 

3. In February 2019, the Veteran filed a claim for service connection for Raynaud’s disease on a VA form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits, under the Appeals Modernization Act (AMA).

4. In a May 2019 decision, the Agency of Original Jurisdiction made an implicit decision that new and relevant evidence had not been submitted to reopen the previously denied claim for service connection for Raynaud’s disease.

5. New evidence was received after the September 2000 AOJ denial that is relevant to the issue of entitlement to service connection for Raynaud’s disease.

6. The Veteran has, at worst, Level II hearing loss in the left ear, and the hearing loss in the right ear is not service-connected.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for Raynaud’s disease have been met due to the receipt of new and relevant evidence. 38 C.F.R. § 3.156(d).

2. Throughout the period of appeal, the criteria for a rating higher than 0 percent for left ear hearing loss have not been met or more nearly approximated. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.385, 4.1-4.14, 4.85, 4.86, Diagnostic Code 6100.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Army from September 1988 to March 1990.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a May 2019 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). On a VA form 10-182, Notice of Disagreement, submitted in July 2019, the Veteran requested the Evidence Submission docket.

In February 2019, the Veteran filed a VA form 21-526EZ, Application for Disability Compensation and Related Compensation Benefits, under the Appeals Modernization Act. On that form, the Veteran applied for service connection for an eye disability and for Raynaud’s disease. The Veteran also applied for service connection for unspecified joint disabilities as secondary to Raynaud’s disease, neuropathy of all four extremities as secondary to Raynaud’s disease, a gall bladder disability as secondary to Raynaud’s disease, a low back disability, right and left ankle disabilities as due to physical training, bilateral Morton’s neuroma as due to physical training, bilateral plantar fasciitis as due to physical training, bilateral flatfeet, right and left knee disabilities as secondary to bilateral flatfeet, right and left shin splints as secondary to bilateral flatfeet, a migraine headache disability, urinary incontinence (fistula), sinusitis, allergies, tinnitus, and bilateral hearing loss.

In April 2019 correspondence, the Agency of Original Jurisdiction (AOJ) informed the Veteran that the claims for service connection for an eye disability and for Raynaud’s disease had previously been denied. Service connection for status post corneal abrasion and Raynaud’s disease were denied in a July 2001 AOJ decision. The AOJ informed the Veteran that under the AMA, VA had changed its review process concerning previously denied claims. The AOJ informed the Veteran that to have her prior claims reviewed, she needed to submit either VA Form 10-182, VA Form 20-0995, or VA Form 20-0996. The AOJ provided the Veteran with a chart to determine which form she needed to submit. No response from the Veteran to the April 2019 correspondence is of record. 

The Board recognizes that within the May 2019 decision on appeal, in the sections discussing the denial of service connection for unspecified joint disabilities as secondary to Raynaud’s disease, neuropathy of all four extremities as secondary to Raynaud’s disease, and a gall bladder disability as secondary to Raynaud’s disease, the AOJ specifically found that: “The evidence does not show that raynaud’s disease is related to service. Therefore, service-connection for [claimed disability] on a secondary basis to this condition cannot be established. There is also no evidence showing [claimed disability] was incurred in or aggravated by military service.” Therefore, the AOJ implicitly made a decision and found that new and relevant evidence had not been submitted to reopen the previously denied claim for service connection for Raynaud’s disease. On a VA form 10-182, Decision Review Request: Board Appeal (Notice of Disagreement), submitted in July 2019, the Veteran specifically disagreed with the AOJ’s implicit decision that new and relevant evidence had not been submitted to reopen the previously denied claim for service connection for Raynaud’s disease, Therefore, the Board will address the claim of whether new and relevant evidence has been submitted to reopen a previously denied claim for service connection for Raynaud’s disease in this decision. 

1. Whether new and relevant evidence has been submitted to reopen a previously denied claim for service connection for Raynaud's disease

VA will readjudicate a claim if new and relevant evidence is presented or secured. 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156(d)). Relevant evidence is evidence that tends to prove or disprove a matter in issue. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501(a)(1)). The Board notes that the task is to first decide whether new relevant evidence has been received, as opposed to whether or not the evidence actually substantiates the claim. 

Relevant evidence added to the record since the prior September 2000 decision includes additional VA treatment records. That evidence documents Raynaud’s disease. 

The Board finds the Veteran submitted new evidence after the September 2000 rating decision that is relevant to the claim. Based on that newly added evidence, the Board finds that new and relevant evidence has been added to the record that may prove or disprove the current disability element of the claim for service connection for Raynaud’s disease. Readjudication of the claim is warranted.

2. Entitlement to an initial disability rating higher than 0 percent for left ear hearing loss is denied.

Disability ratings are determined by the application of VA’s Schedule for Rating Disabilities, which is based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran’s entire history is to be considered when assigning disability ratings. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). A claimant may experience multiple distinct degrees of disability that may result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The following analysis is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

Ratings of hearing loss range from 0 to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average hearing threshold levels as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 Hertz. To rate the degree of disability for hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85(h), Table VI. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are performed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). 

The criteria for rating hearing impairment use controlled speech discrimination tests (Maryland CNC) together with the results of pure tone audiometry tests. These results are then charted on Table VI, or Table VIA in exceptional cases as described in 38 C.F.R. § 4.86, and Table VII. 38 C.F.R. § 4.85. An exceptional pattern of hearing loss occurs when the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86. In such cases, the Roman numeral value is determined using both Table VI and VIA and whichever table results in a higher Roman numeral value is used to calculate a rating using Table VII. 38 C.F.R. § 4.86. 

At an April 2019 VA examination, pure tone thresholds, in decibels, were:

 HERTZ

 500 1000 2000 3000 4000

LEFT 20 25 25 30 35

The speech discrimination score was 84 percent for the left ear using the Maryland CNC Test. The Veteran reported that she had difficulty hearing others at a distance. She had to turn her television and telephone louder so that she could hear them.

As a preliminary matter, the Board observes that the pure tone thresholds recorded on the audiological evaluation do not reflect an exceptional hearing impairment as defined by regulation, as the pure tone threshold at each of the four specified frequencies of 1000, 2000, 3000, and 4000 Hertz is not 55 decibels or more, and the pure tone threshold is not 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. Thus, Table VIa is not for application. 38 C.F.R. § 4.86. Consequently, the Board will evaluate the Veteran’s hearing using Table VI.

Applying the method for evaluating hearing loss to the results of the Veteran’s April 2019 audiological evaluation reveals Level II hearing in the left ear, based on application of the reported findings to Table VI. The nonservice-connected right ear is assigned Level I for rating purposes. 38 C.F.R. § 4.85(f). Application of these findings to Table VII results in a 0 percent rating under 38 C.F.R. § 4.85, Diagnostic Code 6100.

Lay persons are competent to provide opinions on some medical issues. Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, in this case, a lay opinion falls outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). To the extent that the Veteran contends that her hearing loss is more severe than currently rated, while she is competent to report symptoms such as difficulty understanding speech, she is not competent to report that her hearing acuity is of sufficient severity to warrant a certain percentage rating because such an opinion requires medical expertise and training in evaluating hearing impairment, which she does not possess, and the use of audiometric equipment. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

Based upon the results from the VA examination, the Board finds that the criteria for a compensable disability rating for left ear hearing loss have not been met. 38 C.F.R. §§ 4.85, 4.86. The Board finds that the preponderance of the evidence is against the claim for increase and the claim must be denied. 38 U.S.C. § 5107(b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

1. Entitlement to service connection for Raynaud's disease is remanded.

A veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by service. 38 U.S.C. § 1111. Only such conditions as are recorded in examination reports are to be considered as noted. 38 C.F.R. § 3.304(b).

On August 16, 1988, the Veteran was given an examination to determine her suitability for active duty. The examiner indicated that the Veteran’s vascular system was normal. The examiner signed the report of the examination and indicated that as of August 16, 1988, the Veteran was qualified for induction to the service. A service treatment record from December 1988 contains the doctor’s notation that the Veteran had Raynaud’s disease “all her life.”

Post-service records contain notations of Raynaud’s disease, such as in an April 2003 VA treatment record.

The Veteran has not been provided a VA examination in connection with the claim for service connection for Raynaud’s disease. No medical opinion is of record concerning etiology of Raynaud’s disease. This constitutes a pre-decisional duty-to-assist error. Therefore, on remand, an etiology opinion should be obtained to clarify whether Raynaud’s disease pre-existed service, was aggravated by service, or is related to service. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

2. Entitlement to service connection for unspecified joint disabilities, claimed as secondary to Raynaud's disease, is remanded.

3. Entitlement to service connection for neuropathy of the right upper extremity, claimed as secondary to Raynaud's disease, is remanded.

4. Entitlement to service connection for neuropathy of the left upper extremity, claimed as secondary to Raynaud's disease, is remanded.

5. Entitlement to service connection for neuropathy of the right lower extremity, claimed as secondary to Raynaud's disease, is remanded.

6. Entitlement to service connection for neuropathy of the left lower extremity, claimed as secondary to Raynaud's disease, is remanded.

7. Entitlement to service connection for a gall bladder disability, claimed as secondary to Raynaud's disease, is remanded.

The Veteran has asserted that he has an unspecified joint disability, neuropathy of all four extremities, and a gall bladder disability, all secondary to Raynaud’s disease. The Board notes that if the claim for service connection for Raynaud’s disease is successful, it could affect the claims for entitlement to service connection for an unspecified joint disorder, neuropathy of all four extremities, and a gall bladder disorder secondary to his Raynaud’s disease. Therefore, the claims are inextricably intertwined. Harris v. Derwinski, 1 Vet. App. 180 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together). Therefore, further consideration of the claims for entitlement to service connection for an unspecified joint disorder, neuropathy of all four extremities, and a gall bladder disorder must be deferred.

8. Entitlement to service connection for a migraine headache disability is remanded.

Service medical records from June 1989 show that the Veteran was treated for headaches.

A May 2001 VA treatment record contains the Veteran’s report that she began experiencing headaches after experiencing an injury to the right eye in 1989. A VA treatment record from August 2002 indicates that the Veteran had a 10-year history of experiencing headaches. Subsequent VA treatment records show ongoing reports of headaches.

The Veteran has not been provided a VA examination in connection with the claim for service connection for a headache disability. As the Veteran was treated while on active duty for headaches, and as post-service treatment records also show treatment for headaches, the failure to provide the Veteran with a VA examination constitutes a duty-to-assist error. The Board finds that a VA examination is needed to address whether the Veteran’s headaches could be related to active service. 38 U.S.C. § 5103A(d); 38 C.F.R. § 3.159(c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

9. Entitlement to service connection for right ear hearing loss is remanded.

At an April 2019 VA examination, pure tone thresholds, in decibels, were:

 HERTZ

 500 1000 2000 3000 4000

RIGHT 20 20 25 25 25

The speech discrimination score was 88 percent for the right ear using the Maryland CNC Test.

The April 2019 VA audiological findings support the conclusion that the Veteran has a current right ear hearing loss disability for VA compensation purposes, as the findings show a speech recognition score of less than 94 percent for the right ear, using the Maryland CNC Test. 38 C.F.R. § 3.385.

When VA provides an examination, even if not required to do so, an adequate one must be provided. Barr v. Nicholson, 21 Vet. App. 303, (2007). The VA examiner opined that the claimed right ear hearing loss was less likely as not caused by or a result of service noise exposure because the Veteran’s hearing was within normal limits for the right ear. That rationale is contradicted by the speech discrimination scores recorded by the same VA examiner which indicate that the Veteran had a right ear hearing loss disability for VA compensation purposes. The failure to have the VA examiner resolve that inherent contradiction constitutes a duty-to-assist error. On remand, the Veteran should be scheduled for a VA examination to determine the etiology of right ear hearing loss disability.

10. Entitlement to service connection for tinnitus is remanded.

11. Entitlement to service connection for a low back disability is remanded.

12. Entitlement to service connection for a right ankle disability, claimed as due to physical training, is remanded.

13. Entitlement to service connection for a left ankle disability, claimed as due to physical training, is remanded.

14. Entitlement to service connection for bilateral Morton's neuroma, claimed as due to physical training, is remanded.

15. Entitlement to service connection for bilateral plantar fasciitis, claimed as due to physical training is remanded.

16. Entitlement to service connection for bilateral flatfeet is remanded.

17. Entitlement to service connection for a right knee disability, claimed as secondary to bilateral flatfeet, is remanded.

18. Entitlement to service connection for a left knee disability, claimed as secondary to bilateral flatfeet, is remanded.

19. Entitlement to service connection for right shin splints, claimed as secondary to bilateral flatfeet, is remanded.

20. Entitlement to service connection for left shin splints, claimed as secondary to bilateral flatfeet, is remanded.

21. Entitlement to service connection for urinary incontinence (fistula) is remanded.

22. Entitlement to service connection for sinusitis is remanded.

23. Entitlement to service connection for allergies is remanded.

On a VA form 21-526EZ received by the AOJ in February 2019, the Veteran indicated that she had received treatment for all of the claimed disabilities at the VA Medical Center (VAMC) in Miami, Florida, from 1990 through the present. 

In April 2019, the AOJ noted that although the Veteran claimed treatment within the Miami VAMC system beginning in 1990, the electronic records available through CAPRI did not begin until May 2001. The AOJ noted that registration information showed that the Veteran registered at the Miami VAMC for treatment in March 1990. The AOJ requested that the records from March 1990 through May 2001 be provided or a response provided regarding their unavailability. In a May 2019 response, the Miami VAMC provided an incomplete set of paper copies of the electronic CAPRI records beginning in May 2001. It does not appear that any further efforts were made to obtain the Miami VAMC treatment records for the period from March 1990 through May 2001.

Records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. Dunn v. West, 11 Vet. App. 462 (1998); Bell v. Derwinski, 2 Vet. App. 611 (1992). The failure to obtain the Veteran’s treatment records from the Miami VAMC for the period from March 1990 through May 2001 constitutes a duty to assist error. On remand, appropriate efforts must be made to obtain the Veteran’s treatment records from the Miami VAMC for the period from March 1990 through May 2001, to include a request that any retired or archived records be associated with the claims file.

The matters are REMANDED for the following action:

1. Obtain all of the Veteran’s relevant outstanding VA treatment records, to include those from the Miami VA Medical Center from March 1990 to May 2001. All efforts to obtain those records must be fully documented and VA facilities must provide a negative response if no records are found. If any records have been retired or archived, all necessary efforts must be taken to call them back to associate them with the file. The AOJ should make as many attempts as necessary to obtain those records from the facility at which the records have been retired or archived. All efforts to obtain the records should be documented. If at any point the AOJ determines that the records do not exist or further efforts to obtain the records would be futile, such a conclusion with the supporting rationale should be documented.

2. If the AOJ determines that the Veteran’s treatment records from the Miami VAMC for the period prior to May 2001 do not exist or that further efforts to obtain the records would be futile, the AOJ should inform the Veteran and representative. The AOJ should also inform them of the efforts to obtain the records and why it is believed that the records do not exist or further efforts to obtain the records would be futile.

3. Then, schedule the Veteran for an examination by a VA medical doctor examiner to determine the nature and etiology of claimed Raynaud’s disease and headache disabilities. The examiner should review the entire claims file, to include the service medical records, and the Veteran's lay statements. After a review of the evidence, an interview with the Veteran, and an examination, the examiner must offer the following opinions:

(a.) Regarding any diagnosed Raynaud’s disease, did that disability clearly and unmistakably preexist the Veteran’s entrance into service? If so, is it clear and unmistakable that the preexisting Raynaud’s disease was not permanently aggravated beyond its normal progression by service? Please cite to any evidence to support a clear and unmistakable finding or preexistence and lack of aggravation.

(b.) If the examiner finds that a Raynaud’s disease disability did not clearly and unmistakably preexist entrance to service, is at least as likely as not (50 percent or greater probability) that any diagnosed Raynaud’s disease disability is related to service or any incident of service, or first manifested during service?

(c.) If Raynaud’s disease is diagnosed, is it at least as likely as not (50 percent or greater probability) that the disability (1) began service, (2) manifested within one year after separation from either period of service, or (3) was noted during service with continuity of the same symptomatology since service?

(d.) Is it at least as likely as not (50 percent or greater probability) that any diagnosed headache disability is related to service or any incident of service?

4. Schedule the Veteran for a VA examination for an opinion on whether any right ear hearing loss is as likely as not (50 percent or greater probability) related to noise exposure in service. The Veteran has credibly reported exposure to loud noise during service. The examiner must review the claims file and should note that review in the report. The Board notes that the Veteran was not diagnosed with right ear hearing loss at separation or during service, but that is not dispositive on the issue of whether current right ear hearing loss is related to acoustic trauma in service. The examiner should discuss and consider the Veteran’s lay history of right ear hearing loss during and after service. The examiner should include puretone audiology testing.

 

 

Harvey P. Roberts

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Layton, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.